IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| CAROLYN MATTIX, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 12-3563-CV-S-ODS ) |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) |
| Defendant. | ) |

## ORDER AND OPINION AFFIRMING
## COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying her application for disability benefits. The Commissioner's decision is affirmed.

## I. BACKGROUND

Plaintiff was born in September 1963. She graduated from high school and, in 1987, joined the Army. She served overseas during Desert Storm and received an honorable discharge in 1991. Plaintiff worked as a cook for more than six years before she was fired in July 2010; before working as a cook she worked with a sanitation department.

While Plaintiff's alleged onset date is August 25, 2010, a brief examination of her medical history prior to that date is helpful. While in the army, Plaintiff injured her back, knee, and foot when she fell off a truck. In December 2006, she was treated at the VA Hospital for pain in her neck, ankle and foot. R. at 246-47. In February 2007, she was treated for pain in her hand. R. at 245. In December 2008, she was treated for lower back pain. R. at 244.

In January 2009, Plaintiff told doctors at the VA Hospital that she experienced vomiting every day ever since returning from Desert Storm. She was diagnosed with chronic eructation (i.e., belching) and chronic diarrhea, and tests were ordered. R. at

220-21. Those tests revealed Plaintiff was infected with H. pylori bacteria, which caused her chronic gastritis. R. at 187. In August 2009, Plaintiff requested a prescription for a cane, which was provided. R. at 198-99.

In June 2010, Plaintiff reported complaints of (and requesting medication for) increased back pain and difficulty ambulating to a nurse; she was told to make an appointment with the doctor because it had been so long since her last exam. R. at 194. Plaintiff saw Dr. Michael Lishnevski at the VA Hospital on August 9 (a little more than two weeks before the alleged onset date) and reported her back pain was getting worse. She came in using a cane and reported that her pain was "somewhat" relieved through use of a TENS unit at home and medication. Dr. Lishnevski noted a recent x-ray showed degenerative arthritis and mild scoliosis; he continued her dosage of naproxen and recommended Plaintiff undergo an MRI. R. at 270; see also R. at 182-83 (results of the x-ray). The parties do not identify the results of any such MRI. On that same day, apparently in response to questions posed during the intake process, Plaintiff rated the pain at a one on a scale of one to ten; she was also advised to lose weight. R. at 276.

Later in August, Plaintiff saw Dr. Jon Petersen for a consultative examination. The exam was largely unremarkable. Dr. Petersen opined that Plaintiff could sit and stand for fifteen minutes each before needing a "postural change . . . to relieve her back pain," could walk for thirty minutes at a time, lift no more than fifty pounds, and carry twenty pounds frequently and thirty pounds occasionally. He found no basis for limiting her ability to handle objects such as tools or other small objects. R. at 238-43.

In December, Plaintiff went to the VA Hospital and for treatment for diabetes and other ailments; she also complained of chronic pain and requested an increase in pain medication or a change to different medication. She was prescribed a muscle relaxer (Flexeril). R. at 258.[1] In February 2011, Plaintiff requested another medication change;

---

[1] At some point Plaintiff was rated with 20% disability due to degenerative arthritis in her spine and an additional 10% disability due to limited motion in her ankle, for a total disability rating of 30%. This is reflected in notes from a visit to the VA Hospital in late December 2010. However, this visit appears to have been for dermatological issues, so it is unlikely the rating was assessed at this visit. R. at 248-49. The parties do not shed any further light on this matter.

2

a change to Lyrica was discussed but it is not clear whether Lyrica was prescribed; it appears Gabapentin (a/k/a nuerontin) was prescribed. During the visit she was observed to have "multiple tender areas indicative of fibromyalgia syndrome." R. at 287-88. Plaintiff returned in June 2011 for follow up on her back and foot pain and hypertension, but nothing noteworthy is contained in the report. R. at 332, 335-36. An x-ray performed in July 2011 revealed mild degenerative changes in her sacrum and coccyx. "[M]inimal scoliosis" was also evidenced, but there was no spondylolysis or spondylolisthesis, the disc spaces were "reasonably well-preserved" and there was "no appreciable acute osseous abnormality." R. at 320-21. X-rays of her right ankle revealed "mild degenerative skeletal change with no appreciable acute osseous or adjacent soft tissue abnormality." X-rays of the foot revealed "degenerative skeletal change with a plantar spur." R. at 322.

The administrative hearing was held in October 2011; pertinent evidence from the hearing will be discussed below. Two months after the hearing, Plaintiff went to the VA Hospital for follow up. Mild edema was noted. Plaintiff exhibited normal grip strength. Tenderness on the plantar muscle was noted, but there was no tenderness over the spine or the associated muscles. The doctor noted Plaintiff had gained weight, which contributed to what was described as tendonitis in her foot. R. at 442-44. Plaintiff had a nerve conduction study performed in January 2012; it revealed "evidence of moderate to severe carpal tunnel syndrome on the left and moderate on the right. The left lower extremity study is normal." R. at 355. The following month, Plaintiff was seen for what she described as pain in her right ankle that began several months prior following an incident where she twisted her ankle. Early and mild tarsal tunnel syndrome was suspected, and customized orthotics were recommended. R. at 428. In April, Plaintiff reported that she was not using the orthotics because they did not fit in the new shoes she bought. Mild swelling in the ankle was noted, and the doctor increased Plaintiff's pain medication and encouraged Plaintiff to use the inserts. R. at 415-16. Later that month, x-rays revealed a bone spur. R. at 411.

During the hearing, Plaintiff testified that she was unemployed since sometime in July 2010, when she was fired after she dropped the fryer basket in the grease, splashing grease on herself and another person. R. at 33. Since then, she has been

3

collecting unemployment and looking for work as a cook.  R. at 33-35.  She is able to dress herself, care for herself, prepare meals, shop, wash dishes, clean the house, and do the laundry.  She also writes short stories.  R. at 36-38; see also R. at 145.  She is also capable of using a push mower to mow the area around her house.  R. at 39.  Plaintiff described her typical day as getting up, cooking breakfast, walking for a while outside, and then resting; after resting or taking a nap, she takes another walk and then does housework.  R. at 39.  She testified she experiences constant pain in the middle and lower portions of her back that extends to her tailbone.  The pain gets worse when she sits or stands and is alleviated when she reclines or sits in a non-vertical position.  R. at 40.  She said her ability to use her arms and hands is limited; her arms cramp and hurt constantly, and the muscles are numb.  She also drops things.  R. at 35.  Plaintiff estimated she could stand for fifteen to twenty minutes and lift a gallon of milk; she denied experiencing pain in her legs and did not testify as to any limits on how long she could sit.  R. at 41.  With respect to digestive issues, Plaintiff testified that she takes omeprazole daily; still, when she eats spicy foods or dairy products, she gets sick.  She also testified that she vomits daily.  R. at 41-42.

The ALJ elicited testimony from a vocational expert ("VE").  In her hypothetical, the ALJ posited a person of Plaintiff's age, education and experience who could perform lift twenty pounds occasionally, ten pounds frequently, could sit up to six hours per day and stand up to six hours per day, and who needed the option to alternate between sitting and standing up to every thirty minutes.  The VE testified such a person could not return to their past work, but could work as a folding machine operator, collator operator, or set assembler.  R. at 46-47.  Plaintiff's counsel posed a question that added the following restrictions to the ALJ's hypothetical: three days a week the person required six to seven restroom breaks outside of normal break periods, each lasting five to ten minutes.  The VE testified such a requirement would be excessive.  R. at 47-48.

The ALJ found Plaintiff's residual functional capacity ("RFC") was consistent with her hypothetical question to the VE.  R. at 12.  In reaching this decision, the ALJ found Plaintiff was not fully credible in describing her limitations.  She was not really reliant on a cane: she had not used it while working before she was fired, and it had been prescribed because she asked for one and not because any doctor determined she

4

medically needed one. She was terminated from her last job and did not leave it due to medically-related limitations. Plaintiff was drawing unemployment, which meant she represented herself under oath as being able, willing and ready to work. Indeed, she was actively looking for a job. Plaintiff's medical treatment had been relatively conservative and her complaints to doctors did not match her testimony. The ALJ also found Plaintiff's daily activities were inconsistent with the limitations she described. Based on her findings about Plaintiff's RFC and the VE's testimony, the ALJ found Plaintiff could perform work in the national economy.

## II. DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Gragg v. Astrue, 615 F.3d 932, 938 (8th Cir. 2010).

### A. Plaintiff's Credibility

Plaintiff alleges the ALJ conducted an improper credibility determination.[2] The critical issue is not whether Plaintiff experiences pain, but rather the degree of pain that

---

[2]While this is Plaintiff's second argument, the Court elects to address it first because Plaintiff's credibility is a factor in ascertaining her RFC, and the RFC is the focal point of Plaintiff's first argument.

5

she experiences. House v. Shalala, 34 F.3d 691, 694 (8th Cir.1994). The familiar standard for analyzing a claimant's subjective complaints of pain is set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984) (subsequent history omitted):

> While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.
>
> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1. The claimant's daily activities;
> 2. the duration, frequency and intensity of the pain
> 3. precipitating and aggravating factors;
> 4. dosage, effectiveness and side effects of medication;
> 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

739 F.2d at 1322. While current regulations incorporate these considerations, the Eighth Circuit has declared that the "preferred practice" is to cite Polaski. Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007).

Plaintiff argues the ALJ placed "too much" weight on her daily activities. However, Plaintiff's daily activities are undeniably a proper factor to consider. Once that is recognized, the weight to be accorded to the factor is a matter for the finder of fact. Plaintiff contends that daily activities are relevant only if they can be conducted over a

6

period of time, but this observation is of no help to Plaintiff in this case where there is no evidence that she does not conduct these activities on regular and persistent basis. Plaintiff also faults the ALJ for considering her receipt of unemployment benefits; while she concedes it is a valid consideration, she hypothesizes circumstances in which an applicant might both receive unemployment benefits and be disabled. Once again, the weight to be given this undeniably valid factor is for the factfinder to determine. In addition, the Court notes there is no evidence in the Record reconciling the inconsistency in *Plaintiff* seeking disability benefits while receiving unemployment benefits and actively looking for work.

Plaintiff also fails to account for the other relevant factors considered by the ALJ. The relevance of Plaintiff's cane is suspect given (1) it was prescribed because she wanted it and not because she was determined to need it and (2) she worked after she had a cane and did not use it while at work. Plaintiff was treated rather conservatively (with mild medication and instructions to lose weight), which is inconsistent with the disabling conditions she alleges. After being treated in January 2009 for gastritis, there are no further records evidencing complaints of daily vomiting. Plaintiff's condition may have worsened since she lost her job in July 2010, but the Record supports the ALJ's credibility assessment.

## B. The RFC

Plaintiff argues the RFC derived by the ALJ is infirm because no medical doctor endorsed that precise RFC, and the ALJ did not match a medical doctor's statement to each and every portion of the RFC. Plaintiff's argument demands more of the ALJ than is required by law.

While "a claimant's RFC is a medical question, . . . in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively." Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007). It is simply not true that the RFC can be proved *only* with medical evidence. McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000); Dykes v. Apfel, 223 F.3d 865, 866 (8th Cir. 2000) (per curiam). Evidence of Plaintiff's actual daily

activities, Plaintiff's testimony, and the medical evidence that existed were sufficient to support the ALJ's determination about Plaintiff's capabilities.

Here, the ALJ relied on Dr. Peterson's consultative opinion, modified in part by Plaintiff's testimony. R. at 15. She also reviewed all of the medical reports. The ALJ had ample information from which to formulate an RFC, and that RFC is supported by substantial evidence in the Record as a whole.

### III.  CONCLUSION

The Commissioner's final decision denying Plaintiff's application for benefits is affirmed.

IT IS SO ORDERED.

DATE: September 27, 2013

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT